## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE  DISTRICT OF FLORIDA
## TAMPA DIVISION

| | |
|---|---|
| IRWIN TRIPP <br><br> Plaintiff, <br><br> vs. <br><br> WALMART INC. (f/k/a WAL-MART STORES, INC.) and WAL-MART STORES EAST, L.P., <br><br> Defendants. | **JURY TRIAL DEMANDED** <br><br> CIVIL ACTION <br> FILE NO.: 8:21-CV-00510-WFJ-SPF |

## THIRD AMENDED COMPLAINT
## AND DEMAND FOR JURY TRIAL

COMES NOW, IRWIN TRIPP, Plaintiff in the above-styled civil action, by and through his undersigned counsel, and files this Third Amended Complaint for Damages against WALMART INC. (f/k/a WAL-MART STORES, INC.) and WAL-MART STORES EAST, L.P., collectively, Defendants in the above-styled civil action.  Plaintiff files this Third Amended Complaint pursuant to Federal Rule of Civil Procedure 15(a)(2) and Order of this Court, and shows this Honorable Court the following:

## PARTIES, VENUE AND JURISDICTION

1. This lawsuit is the result of an accident that occurred at a Walmart Distribution Center in Winter Haven, Polk County, Florida when a Walmart employee wrongfully backed over Plaintiff Irwin Tripp causing him permanent injuries.

2. Plaintiff, Irwin Tripp, is a citizen of the United States and resides in Conyers, Rockdale County, Georgia.

3. Defendant Walmart Inc. (f/k/a Wal-Mart Stores, Inc.) is a foreign (Delaware) corporation having its principal place of business location at 702 SW 8th Street, Bentonville, AR 72716. Defendant Walmart Inc. (f/k/a Wal-Mart Stores, Inc.) is a resident of Arkansas.

4. Defendant Walmart Inc. (f/k/a Wal-Mart Stores, Inc.) regularly transacts business in Florida. Defendant Walmart Inc. (f/k/a Wal-Mart Stores, Inc.) is subject to the jurisdiction and venue of this Court, and has previously been served with summons, complaint and process by delivering a copy of same to its registered agent. A copy of this Third Amended Complaint can be served on Walmart Inc. (f/k/a Wal-Mart Stores, Inc.) via its counsel of record, LUKS SANTANIELLO PETRILLO & JONES, LLC, 100 North Tampa Street, Suite 2120 Tampa, FL 33602-5809, Telephone: 813-226-0081 and FROST BROWN

TODD LLC, 201 North Illinois Street, Suite 1900, PO Box 44961 Indianapolis, IN 46244-0961, Telephone (317) 237-3800.

5.  Defendant Wal-Mart Stores East, L.P. is a foreign limited partnership having its principal place of business at 702 SW 8th Street, Bentonville, AR 72716. Defendant Wal-Mart Stores East, L.P. is a resident of Arkansas.

6. Defendant Wal-Mart Stores East, L.P. regularly transacts business in Florida.   Defendant Wal-Mart Stores East, L.P. is subject to the jurisdiction and venue of this Court, and has previously been served with summons, complaint and process by delivering a copy of same to its registered agent.  A copy of this Third Amended Complaint can also be served on Wal-Mart Stores East, L.P. via its counsel of record, LUKS SANTANIELLO PETRILLO & JONES, LLC, 100 North Tampa Street, Suite 2120 Tampa, FL 33602-5809, Telephone: 813-226-0081 and FROST BROWN TODD LLC, 201 North Illinois Street, Suite 1900, PO Box 44961 Indianapolis, IN 46244-0961, Telephone (317) 237-3800.

7. At all times material, Plaintiff Irwin Tripp was an independent contract driver residing in Conyers, Georgia.

8. This Court has diversity jurisdiction over this matter pursuant to 28 U.S.C. §1332 because the matter in controversy exceeds $75,000, exclusive of interest and costs, and because Plaintiff is a citizen and resident of a different state than Defendants.

9.   Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because the incident that is the subject of this complaint occurred in this Winter Haven, Polk County, Florida.

10. By virtue of the fact that the actions and causes of action for the recovery of damages for injuries to Plaintiff Irwin Tripp occurred prior to his death, in the event he does not survive the litigation, his cause(s) of action do not abate by his subsequent death, and instead survive to the Administrator of his estate.

## GENERAL FACTUAL ALLEGATIONS

11. On or about May 29, 2019, Defendants engaged Irwin Tripp to deliver a load to its distribution center located at 5600 Lucerne Park Road, Winter Haven, Florida 33880 ("Distribution Center").

12. On or about May 29, 2019, pursuant to the scheduled delivery arrangements made with Defendants, Plaintiff Irwin Tripp departed Covington, Georgia to travel to and deliver a load to Defendants at their Distribution Center in Winter Haven, Florida.

13. On or about May 30, 2019, Plaintiff Irwin Tripp arrived at Defendants' Distribution Center and, because he was delivering a scheduled load, was an invitee at the Distribution Center.

14. On or about May 30, 2019, Joshua Binnion, employee of Defendants, was operating a 4x2 Terminal Tractor ("Terminal Tractor") bearing unit number

4

M0007 (also called a "Yard Truck" or "Yard Dog") with an attached trailer (the combined Yard Truck and trailer are hereinafter referred to as "Terminal Tractor Unit").

15. At all times material, the Distribution Center was owned, controlled, or possessed by Defendant Walmart, Inc.

16. At all times material, the Distribution Center was owned, controlled, or possessed by Defendant Wal-Mart Stores East, L.P.

17. At all times material, the Terminal Tractor Unit operated by Joshua Binnion, was owned by Defendant Walmart, Inc.

18. At all times material, the Terminal Tractor Unit operated by Joshua Binnion was owned by Defendant Wal-Mart Stores East, L.P.

19. At all times material, Joshua Binnion was an employee and/or agent of Defendant Walmart, Inc.

20. At all times material, Joshua Binnion was an employee or agent of Defendant Walmart Stores East, L.P.

21. On or about May 30, 2019, Joshua Binnion was operating the Terminal Tractor Unit in the course and scope of his employment with Defendants.

22. After arriving at the Distribution Center for his scheduled delivery, Plaintiff Irwin Tripp, at the instruction of Defendants' employees, backed his semi-truck and trailer into Bay 54, exited the tractor and stepped into the safety/work area

proximate to his truck, where he chocked the wheels of his trailer, removed the pin from his 5th wheel, dollied down, and pulled his tractor forward and away from the trailer. He then got back into the cab of his truck and awaited further directions from Defendants' employees.

23. At or near 10:05 a.m., Plaintiff Irwin Tripp received a call from one of Defendant's employees who told him to come into the shipping and receiving office ("Office") to retrieve paperwork related to his scheduled delivery.

24. In order to travel to the Office, Plaintiff Tripp was required to, and did, exit his truck cab.

25. At or near this same time, Joshua Binnion was operating the Terminal Tractor Unit, which lacked functional safety features, at a high rate of speed through the Distribution Center loading dock/bay area.

26. Defendants knew or should have known of Mr. Binnion's habit of driving at a high rate of speed and knew or should have known the Terminal Tractor Unit lacked functional safety features necessary for its safe operation and to alert others of its movements.

27. At or near this same time, Plaintiff Irwin Tripp, who had just exited his truck, was in a position where, had Binnion operated the Terminal Tractor Unit in a reasonable and safe manner, he would have been visible to Joshua Binnion.

28. While Plaintiff Irwin Tripp was standing in the safety/work zone, Joshua Binnion, traveling at a high rate of speed, recklessly backed the Terminal Tractor Unit into Bay 55, crossing into the safety/work zone in which Tripp was standing, and struck and backed over Plaintiff Tripp, causing severe and permanent injuries and significant damages.

29. No acts or omissions on the part of Plaintiff Irwin Tripp caused the subject pedestrian-vehicle incident.

30. Plaintiff Irwin Tripp did not have prior knowledge of (1) the safety issues associated with the Yard Truck, (2) Joshua Binnion's propensity to back at a high rate of speed (3) to backin such a way that he created a blind spot down the side of trailers in pedestrian areas, or (4) that Defendants had dispatched Binnion to back a trailer next to the driver's side of the truck from which Tripp had just exited.

31. Plaintiff Irwin Tripp's injuries are permanent, significant, and continuing in nature.

32. Plaintiff Tripp has incurred past medical expenses in excess of $2,641,460.00 and continues to incur medical expenses.  Some of his past medical expenses include:

- Lakeland Regional Health Medical Center:  $ 2,473,975.90
- Watson Clinic:                            $ 78,885.00
- Rocky Mountain Holdings, LLC:             $ 45,724.99
- U.S. Dept. of Veterans Affairs:           $ 29,782.41
- Benchmark Physical Therapy:               $ 5,170.50

- Lakeland Pathologist, PA:                    $ 4,901.00
- Osprey Emergency Physicians:              $ 2,025.00
- Radiology and Imaging Specialists:      $ 996.00

33. As a result of the conduct of the Defendants and/or their agents and employees, Plaintiff Irwin Tripp incurred past lost wages and will incur lost wages in the future.

34. As a result of the conduct of the Defendants and/or their employees, Plaintiff Irwin Tripp has suffered other damages, such as loss of enjoyment of life and permanent scarring and disfigurement for which he is entitled to compensatory and equitable damages.

35. As a result of the conduct of each Defendant, each Defendant is liable to Plaintiff Irwin Tripp for damages associated with his personal injuries, pain and suffering, severe emotional distress, financial and economic loss, including but not limited to obligations for medical services and expenses, present and future lost wages, and other damages for which he is entitled to compensatory and equitable damages.

**COUNT I**
**NEGLIGENCE**
**(VICARIOUS LIABILITY)**

36. Plaintiff realleges paragraphs 1-35.

37. At the time of the accident, Joshua Binnion was an employee of Defendants acting within the scope of his employment in furtherance of Defendants' business.

38. Joshua Binnion had a duty to exercise reasonable care and to comply with existing statutory laws, regulations and/or industry standards in the safe operation of the Terminal Tractor Unit, including but not limited to:

   a.  the duty to operate the Terminal Tractor Unit safely;

   b.  the duty to maintain a proper lookout for pedestrian traffic;

   c.  the duty to operate the Terminal Tractor Unit in such a way that he had a clear view of the direction in which he was moving, down both sides of the unit;

   d.  the duty to communicate and warn of his presence to Plaintiff Irwin Tripp prior to backing his trailer into the Bay;

   e.  the duty to ensure that the area into which he was backing was safe and free of pedestrians; and

   f.  the duty to yield the right-of-way to pedestrians, including Irwin Tripp).

39. Joshua Binnion breached his duty of reasonable care, was negligent, and failed to comply with existing statutory laws, regulations and/or industry standards by:

9

a.  failing to operate the Terminal Tractor Unit in a safe manner;

b.  failing to ensure the safety features on the Terminal Tractor Unit were operational and that it was properly serviced and maintained prior to driving it;

c.  failing to maintain a proper lookout for pedestrian traffic;

d.  failing to maintain a safe speed when operating the Terminal Tractor Unit;

e.  failing to operate the Terminal Tractor Unit in such a way that he had a clear view of the direction in which he was moving, down both sides of the unit;

f.  failing to communicate and warn of his presence to Plaintiff Irwin Tripp, who he had seen in the area, prior to backing his trailer into the Bay;

g.  failing to ensure that the area into which he was backing was safe and free of pedestrians, including Plaintiff Irwin Tripp; and

h.  failing to yield the right-of-way to pedestrians, including Plaintiff Irwin Tripp.

40. As a direct and proximate result of Joshua Binnion's negligence, Plaintiff Irwin Tripp sustained permanent injuries in this pedestrian-vehicle incident.

41. Defendants are liable to Plaintiff Irwin Tripp for all statutory, direct and consequential damages resulting from the negligent conduct of Joshua Binnion under the doctrine of respondeat superior and/or vicarious liability.

**COUNT II**
**FAILURE TO MAINTAIN TERMINAL TRACTOR**
**(DIRECT LIABILITY)**

42. Plaintiffs reallege paragraphs 1-35.

43. On May 30, 2019, Wal-Mart employee Joshua Binnion was using a Terminal Tractor to back a trailer into a loading dock at Walmart's Distribution Center.

44. Defendants owned the Terminal Tractor and controlled its maintenance and repair.

45. Defendants had a duty to maintain the Terminal Truck and trailer.

46. At the time of the incident, the Terminal Tractor's rear lights, including directional lights, flashers, brake lights and a flood light were malfunctioning and in need of replacement or repair.

47. At the time of the incident, the Terminal Tractor's brakes were not operating properly.

48. Through discovery, on July 9, 2021, Plaintiff Irwin Tripp received repair and maintenance records for the Terminal Tractor involved in the subject incident.

49. According to Work Order # 23258750, dated May 18, 2019 (just 12 days before the incident), the Terminal Tractor was inspected because it was leaking oil around the oil filter. Significantly, the technician wrote on the Work Order: "pm [preventative maintenance] is way over due (sic)…. Need a pm service done asap."

50. On May 31, 2021, the day following the subject incident, despite knowing of Plaintiff Tripp's severe injuries and expecting litigation, Defendants conducted maintenance on the Terminal Tractor.

51. Work Order # 23338128 dated May 31, 2019 (the day after the subject incident) reflects that in the twelve (12) days before Plaintiff Irwin Tripp was injured Defendants had failed to address the "long overdue" preventative maintenance which it had been urged to do "asap" by its own employee technician.

52. According to Work Order # 23338128, features which would have been necessary for employees to safely back and operate the Terminal Tractor Unit were not functional: the rear lights on the Terminal Tractor were not inoperable and needed replacing, two (2) connectors on the 7-Way cord (electrical supply wiring harness from the Terminal Tractor to the trailer which would have powered the trailer's rear lights) needed replacing, the Terminal Tractor's flood light was going out.

53. Under "Reason for Repair", Work Order # 23338128 states that "12 [problems] found" during the preventative maintenance inspection and/or service.

12

It goes on to describe problems such as "Electrical or Electronic Failure. Rear l[i]ghts (sic) don't work, flood light going out, rear brakes need to be replace (sic), check engine light flash 3x when starting truck then goes off, water temp gauge (sic) don't work…"

54. Work Order # 23338128 states: "Replace rear brakes lights test to verify all lights are up and running need a computer to read check engine light. add keyboard mount… there (sic) power to water temp gauge in fault. need to replace onsite needs to do full p.m. b service ams rear brakes and check code have DTC [diagnostic trouble code] in work order file…And they need to readjust door. lock truck out due of temperature gauge not working due of over heating an pretrip inspection key 10."

55. Elsewhere, Work Order # 23338128 reads: "Brake replacement, 7-way cord ends replaced – see attachment for details (no attachment accompanied the document as received in discovery).

56. Defendants' work involved the use by their employees of the Terminal Tractor to move and back trailers at their Distribution Center in areas where Defendants not only knew pedestrians would be present, but where they required them to be present, for tasks such as chocking wheels, cranking down landing gear and walking to their Office.

57. Defendants knew or should have known their employees could not operate the Terminal Tractor safely unless it was properly maintained in accordance with the manufacturer's preventative maintenance program and necessary repairs were timely completed.

58. Despite knowing their employees' work involved backing and driving near pedestrians, including delivery drivers like Tripp, who they had instructed to work in and travel through such areas, Defendants failed to properly maintain, service and repair the vehicle, including maintaining safety features essential to its safe use generally, and particularly in pedestrian areas.

59. It was the normal practice of Terminal Tractor drivers to utilize directional signals, flashers, and brake lights as they backed trailers, to provide warnings of their movements.

60. Because the Terminal Tractor's rear lights, including directional lights, flashers, brake lights and a flood light were malfunctioning at the time of the subject incident and in need of replacement or repair, the rear lights, directional lights, flashers, flood lights and brake lights were incapable of offering any warning to pedestrians, including Tripp, that the vehicle was in motion and backing or alerting them to its operator's intentions.

61. Because the Terminal Tractor's 7-way cord/electrical supply to the trailer's rear lights and its brakes were malfunctioning at the time of the subject incident

and in need of replacement or repair, the rear lights and brake lights on the trailer were not operational, and were incapable of warning pedestrians, including Tripp, that the trailer was in motion and backing or alerting them to its operator's intentions, and because the backup alarm tied into the lights it was not functioning.

62. When Joshua Binnion initially struck Irwin Tripp, he attempted to stop the Terminal Tractor Unit but the malfunctioning brakes would not permit him to do.

63. Because the Terminal Tractor's brakes were malfunctioning at the time of the subject incident and in need of replacement or repair, the Terminal Tractor Unit backed into and over Plaintiff Tripp.

64. Defendants breached their duty to maintain the Terminal Tractor by failing to maintain, failing to repair, and failing to perform necessary service to the Terminal Tractor, which it knew would be used in pedestrian areas and knew or should have known it lacked functional features essential to its ability to back safely.

65. Defendants' breaches were a direct and proximate cause of the permanent injuries and significant damages suffered by Plaintiff Irwin Tripp.

66. Defendants are liable to Plaintiff Irwin Tripp for all statutory, direct, and consequential damages resulting from their own negligent conduct in failing to properly maintain the Terminal Tractor.

## **COUNT III**

## NEGLIGENT ENTRUSTMENT
## (DIRECT LIABILITY)

67. Plaintiff realleges paragraphs 1-35, 49, 51-55.

68. Defendants had a duty to provide safe working equipment to its employees and not to entrust the Terminal Tractor to employees, including Joshua Binnion, because they knew or should have known that it lacked functional features that were required for its safe operation, including but not limited to brakes; rear lights (including brake lights, flashers, back up lights, a backup alarm and a functional 7-way cord).

69. Defendants failed to exercise ordinary care and failed to comply with statutory laws, regulations and other existing industry standards of care in permitting its employee, Joshua Binnon, to operate the Yard Truck on May 30, 2019, when it knew the Yard Truck's safety features and brakes were not working properly.

70. When Joshua Binnon backed the Terminal Tractor Unit into Loading Dock Bay 55, adjacent to the driver's side door of Irwin Tripp's tractor cab, the Yard Truck did not permit him to alert Tripp of his presence because its rear lights, brake lights, backup light and backup alarm were not functional.

71. When Joshua Binnon backed the Terminal Tractor Unit into Loading Dock Bay 55, adjacent to the driver's side door of Irwin Tripp's tractor cab, the Yard

Truck's brakes were not operating properly, such that when he realized he had struck Tripp, he could not stop the vehicle.

72. Defendants' negligent entrustment of the Yard Truck in its unsafe state of disrepair to Joshua Binnion, was a direct and proximate cause of Plaintiff Irwin Tripp's severe injuries and significant damages.

## COUNT IV
## PREMISES LIABILITY/FAILURE TO MAINTAIN PREMISES
## (DIRECT LIABILITY)

73. Plaintiff realleges paragraphs 1-35.

74. At all times material, Defendants owned, possessed, or controlled the Distribution Center and exercised control over the entire premises, including the bay areas, the walkways, the signage, and the safety zones.  Defendants also controlled the traffic flow on the premises.

75. Defendants had a duty to Plaintiff Tripp as an invitee at the Distribution Center to maintain its premises in a reasonably safe condition.

76. Defendants breached that duty by not providing safe pedestrian access to the Office. The area where Plaintiff Tripp was required to walk had no marked pedestrian walkways, no pedestrian signs, and no physical or visual barriers to separate or protect pedestrian traffic from vehicular traffic to enable delivery drivers to safely walk from their trucks to the Office.

77. Defendants were aware the areas where they required their guests to enter and ultimately walk were heavily trafficked by terminal trucks, terminal trucks backing trailers, tractor trailers and other vehicles.

78. There was no path designed for pedestrian safety from Bay 54, where Plaintiff Irwin Tripp had been directed to back his truck, to Defendants' Office, where he was later instructed to walk.

79. Defendants' failure to maintain the premises in a reasonably safe condition was negligent and the injuries to Plaintiff Irwin Tripp, who was struck while standing next to his truck by the backing Terminal Tractor Unit operated by Binnion, were a direct and proximate result of Defendants' negligence.

80. Defendants are liable to Plaintiff Irwin Tripp for all statutory, direct, and consequential damages resulting from their negligence.

### COUNT V
### PREMISES LIABILITY/FAILURE TO WARN
### (DIRECT NEGLIGENCE)

81. Plaintiff realleges paragraphs 1-35.

82. Defendants caused the Terminal Tractor Unit to be backed next to the driver's side of Plaintiff Tripp's truck, from which they requested Tripp exit.

83. Defendants dispatched a driver to the bay next to Plaintiff Tripp who they knew or should have known was prone to driving fast and to backing without a clear view of the direction in which he was traveling.

18

84. Plaintiff Tripp had no knowledge that Joshua Binnion had been dispatched to the bay next to where he was exiting his truck, nor did Tripp know of the danger Joshua Binnion's driving in the next bay posed.

85. Defendants had a duty to warn Irwin Tripp, as a pedestrian, of the concealed danger of walking through the area where the Terminal Tractor Unit was being operated by Binnion.

86. When Defendants verbally instructed Plaintiff Irwin Tripp to come to their Office to retrieve paperwork, they failed to provide verbal instructions for safe passage through the bay area to the Office.

87. When Defendants requested Plaintiff Irwin Tripp come to the Office, Defendants knew or should have known that they also simultaneously dispatched Joshua Binnion to back a trailer to Bay 55, which would cause Binnion to back next to the driver's side door of Irwin Tripp's tractor.

88. By instructing invitee drivers, including Plaintiff Irwin Tripp, to exit their trucks and enter an area where vehicular traffic was permitted in order to get to the Office, without coordinating when and where they dispatched backing Yard Truck drivers and without providing walkways, barriers, or safe pedestrian access, Defendants created a dangerous condition, which was concealed from the pedestrians, where pedestrians were unnecessarily exposed to vehicular traffic, including backing vehicular traffic, controlled by Defendants.

89. Defendants failed to warn Irwin Tripp of the specific risk which Defendants themselves created, namely his exposure, as a pedestrian, to a fast-backing Terminal Tractor Unit whose driver routinely backed without a clear view of his direction of travel.

90. Defendants failed to create or abide by any policies or procedures that would prevent simultaneously dispatching yard truck drivers to areas they requested pedestrians enter or would require employees to warn pedestrians of the dangerous condition.

91. As a direct and proximate result of Defendants' failure to warn of the danger, Plaintiff Tripp was struck by the backing Terminal Tractor Unit causing severe and permanent injuries and significant damages.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Irwin Tripp respectfully requests the following relief:

(a) A judgment against Defendants in such sums as shall be determined to compensate Plaintiff fully and fairly for all general, special, incidental, and consequential damages incurred, or to be incurred, by Plaintiff as the direct and proximate result of the Defendants' and Defendants' employees acts and omissions, including, but not limited to:

i.   Past  medical  expenses  in  an  amount  not  less  than
     $2,641,460.80, as well as present and future medical expenses;

ii.  past, present, and future wage loss;

iii. the diminution in the capacity to earn and labor (past, present
     and  future),  experienced  by  Plaintiff,  separate  and  apart  from
     lost wages;

iv.  past,  present  and  future  pain  and  suffering  experienced  by
     Plaintiff;

v.   past,  present  and  future  mental  anguish,  shock,  fright,  and
     worry  experienced  by  Plaintiff  as  a  result  of  his  serious  and
     permanent injuries;

vi.  the  damages  incurred  as  a  result  of  permanent  diminution  in
     enjoyment of living experienced by the Plaintiff;

vii. past,  present  and  future  physical  impairment  because  Plaintiff
     has sustained physical impairment in the past and will continue,
     in  reasonable  probability,  to  sustain  physical  impairment  in  the
     future;

viii. past, present and future physical disfigurement because Plaintiff
     has sustained physical impairment in the past and will continue,

in reasonable probability, to sustain physical disfigurement in the future;

(b) That all cost of this action be cast against Defendants; and

(c) That Plaintiffs be awarded such further relief as this Court deem just and proper.

## JURY TRIAL DEMAND

Plaintiff demands a trial by jury.

## CERTIFICATION

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have  evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

This 5th day of December, 2021.

FORREST B. JOHNSON & ASSOCIATES

/s/ *Forrest B. Johnson*
FORREST B. JOHNSON, ESQ.
Florida Bar No.: 0272957

 *s/ Stanford N. Klinger*
STANFORD N. KLINGER, ESQ.
Georgia Bar No.: 425191
*Pro Hac*
*Attorneys for Plaintiff*

1745 MLK Jr. Drive, NW
Atlanta, GA 30314
Telephone: 404-758-9111
Facsimile: 888-298-0458
E-mail:  forrestjohnson@fbjlaw.com
E-mail:  markeisha@fbjlaw.com
E-mail:  stanklinger@fbjlaw.com

23

## CERTIFICATE OF SERVICE

I hereby certify that on the 5th of December, 2021, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of filing to the following:

Kevin C. Schiferl
FROST BROWN TODD LLC
201 North Illinois Street, Suite 1900
PO Box 44961
Indianapolis, IN 46244-0961

Jeffrey R. Benson
Daniel J. Santaniello
LUKS, SANTANIELLO, PETRILLO, & COHEN
100 N Tampa Street, Suite 2120
Tampa, FL 33602

This 5th day of December, 2021

FORREST B. JOHNSON & ASSOCIATES

/s/ Forrest B. Johnson
FORREST B. JOHNSON, ESQ.
Florida Bar No.: 0272957

s/ Stanford N. Klinger
STANFORD N. KLINGER, ESQ.
Georgia Bar No.: 425191
Pro Hac
Attorneys for Plaintiff

1745 MLK Jr. Drive, NW
Atlanta, GA 30314
Telephone: 404-758-9111
Facsimile: 888-298-0458
E-mail:  forrestjohnson@fbjlaw.com
E-mail:  markeisha@fbjlaw.com
E-mail:  stanklinger@fbjlaw.com

24