## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

| | |
|---|---|
| IRWIN TRIPP <br><br>                      Plaintiff, <br><br> vs. <br><br> WALMART, INC. (f/k/a WAL-MART STORES, INC.), WAL-MART STORES EAST, L.P., <br><br>                    Defendants. | **JURY TRIAL DEMANDED** <br><br> CIVIL ACTION <br> FILE NO.: 8:21-CV-00510-WFJ-SPF |

## PLAINTIFF IRWIN TRIPP'S  MOTION FOR SANCTIONS FOR FAILURE TO PRESERVE EVIDENCE AND MEMORANDUM OF LAW

Pursuant to Federal Rule of Civil Procedure 37 and the Court's inherent authority, Plaintiff Irwin Tripp moves this Court to sanction Walmart, Inc. and Wal-Mart Stores East, L.P. ("Walmart") for spoliation of the vehicle involved in the collision and other crucial evidence and then concealing the lack of preservation of the vehicle.  Walmart's actions have severely prejudiced Plaintiff's ability to prove its case and accordingly, Plaintiff requests this Court (1)(a) enter default judgment against Walmart as to Counts II and III of the Third Amended Complaint or, (b) alternatively, provide a jury instruction which deems the negligent maintenance of the yard truck a cause of the accident; and (2) strike the expert testimony of Walmart's accident reconstruction expert, Donald Fournier; (3) charge attorneys' fees and costs against Walmart for the hours and resources Plaintiff has expended unraveling the extent of

the spoliation and in bringing this Motion; and (4) order any other sanctions or relief this Court deems appropriate. In support, Plaintiff states:

## I.    Governing Law

In a diversity case, federal law governs the imposition of sanctions for failure to preserve evidence. *Flury v. Daimler Chrysler Corp.*, 427 F. 3d 939, 944 (11th Cir. 2005). However, courts may look to state law spoliation principles as long as they are consistent with federal spoliation principles. *Id.* at 944.

## II.    Introduction

> Aside perhaps from perjury, no act serves to threaten the integrity of the judicial process more than the spoliation of evidence. Our adversarial process is designed to tolerate human failings - erring judges can be reversed, uncooperative counsel can be shepherded, and recalcitrant witnesses compelled to testify. But, when critical documents go missing, judges and litigants alike descend into a world of ad hocery and half measures - and our civil justice system suffers.

> To guard against this, each party in litigation is solemnly bound to preserve potentially relevant evidence.

*United Med. Supply Co. v. United States*, 77 Fed. Cl. 257, 258-59 (2007).

In this tragic case, Plaintiff Irwin Tripp sustained severe injuries, including amputation of both his legs, when Walmart employee Joshua Binnion backed a yard truck and trailer over him.  While it recognized its duty to preserve evidence, Walmart time and again destroyed, altered or lost crucial evidence, then concealed the spoliation. Walmart repaired, serviced and replaced parts on the Yard Truck multiple times before Plaintiff's inspection and destroyed or "lost" the daily maintenance log ("Form 118") and surveillance video. To add insult to injury, Walmart concealed that

work was done on the vehicle. It was not until Plaintiff received documents years after the inspection that his Counsel discerned there had been spoliation—and by that time the Yard Truck had long been put back into service.

By its actions, Walmart put itself in a better position to defend the case while prejudicing Plaintiff. *On the day of the incident*, Walmart's expert inspected the Yard Truck, photographed it and took measurements. Then, *the very next day* Walmart began a series of repairs and maintenance, making it impossible for Plaintiff to prove its condition at the time of the incident.  —Then, at the time of Plaintiff's inspection, Walmart told Plaintiff's expert it had not been repaired. Walmart claims that it then lost the truck's daily maintenance logs and the surveillance video.  Walmart offers no credible explanation of what happened to this evidence. Because of its flagrant disregard for its duty to preserve evidence and because it has made it impossible for Plaintiff to fully prove his claims in Counts II and III, sanctions are warranted.

### III.    Statement of Facts

### A.    The accident

On May 30, 2019, Tripp was delivering a load to the Walmart Distribution Center in Winter Haven, Florida.   After Walmart employees unloaded Tripp's trailer, Walmart called him to pick up paperwork at the Central Receiving Office. He looked to see if anything was moving nearby, indicating that "[b]efore I get out [of] my cab, I always – you know, looking, check my surroundings," he got out of the cab and stepped into the marked safety zone next to his truck and looked back to confirm the green light on the loading dock wall was on, signaling unloading was complete. (Tripp

79:11-24; 113:10-14). As he began to turn toward the front of his tractor, he was struck by a backing yard truck with the identifier M0007 ("Yard Truck") and attached trailer driven by Walmart employee Binnion. (Tripp, 112:12-22; 143:25-144:7). The wreck resulted in horrific injuries to Tripp, prolonged hospitalization, and amputation of both his legs. (Tripp, 39: 14-25, 79: 11-24; 109:18-21, 140:19-141:3; 101: 9-14).

Binnion was backing up fast at an angle with a blind side down the right side when he felt a jolt, stopped his truck, threw it in neutral, and popped his [park] brakes. (Binnion, 44:11-14, 61:1-62:5). The trail of blood on the pavement indicates Tripp was dragged 23 feet. (Fournier, 86:4-87:7; Cherepon, 142:19-24). When Binnion exited the vehicle, he saw Tripp crushed under the trailer and realized the cause of the jolt. (Binnion, 61:22-62:5). He immediately, per protocol, radioed asset protection. (Binnion, 76:2-77:4, 78:17-79:23, 75:18-23). Distribution Center Manager Smith and Safety Manager Cooper arrived at the scene. Cooper said, "it was the worst thing I ever seen in my life, bones and flesh laying there." (Cooper, 123:2-5) Smith concurred: there was "No comparison." (Smith, 98:5-9).

### B.     The duty to preserve evidence arose on the day of the collision.

In the hours after the accident, Walmart corporate told manager Cooper not to do any paperwork or create any documentation, that "it would be taken care of" by corporate. (Cooper, 75:9-76:8; 76:24-77:3; 78:8-20; 106:8-14).[1]  Likewise, the General

---

[1] Cooper testified: "We were -- I was advised that home office was going to send representation to document, do all the -- any research or whatever needed to be done, but -- and, secondly, it wasn't an associate that was involved – or injured, and that's what -- usually we do incident reports on our associates. It was a third-party associate -- or third-party driver." (Cooper 27:14-21). On the day of the incident, Cooper spoke to Blayne Estes, a senior leader at Home Office over Safety and Compliance.

Manager Smith was directed by home office and counsel not to create a report of the incident. (Smith, 8:19-20, 103: 20-25). Within several hours, Walmart's risk management staff, counsel, and its accident reconstruction team were on site. (Cooper, 110:2-111:6; 114: 19-24; Smith, 104:12-16; Cooper, 15-25; 27:11-21).[2] On the evening of the incident, Smith directed operations manager John Jones "to lock the tractor and trailer out, put it in a secure location, make sure it couldn't be accessed or used." (Smith,107: 21-24; Johnson, 22:22-23:2). Manager Cooper testified the truck was ordered to be "locked out" because of the incident. (Cooper, 12:13-15, 122:13-18).

### C.   Walmart's "lockout" procedure for Yard Trucks.

Locking out a vehicle means that no one is allowed to operate it unless a supervisor or operations manager releases it. (Johnson, 23:22-24:6; 33:1-5,35:6-9). It was a "huge policy with Walmart." (Johnson, 32:12-14). When a vehicle is "locked out," a maintenance person should not "touch it without approval," it is parked under a specific carport, and locked with a cable. (Garner, 32:4-13; Johnson, 34:15-35:9, 104:10-12). When a manager locks out a yard truck, "nobody would have access to the key" because Walmart has a safe box that only management can access. (Johnson, 104:10-15, 32:18-23). There would also be entries in a logbook to indicate when and

---

Cooper was "just told that there was going to be some folks coming out to lead the investigation and documentation so we didn't have to do that." (Cooper 76:3-23; 76:24-77:3).

[2] When Plaintiff's Counsel asked Mr. Cooper about Walmart's actions on the day of the accident, Walmart's counsel objected stating, "I'm going to object to form and instruct him [Mr. Cooper] not to answer with respect to anything that may implicate attorneys who are—what they did on the day of the accident." (Cooper, 105:17-106:7).

why it was locked out. (Garner, 47:15-20; 48:3-8).  Walmart now claims that it cannot find the lockout logbook.  (Evans, 14:13-16:4). Johnson, a Walmart service technician, testified if he were given instructions not to perform services on a yard truck that had been locked out, the "truck would not move, period." (Johnson, 33:17-22).

**D.    The Yard Truck Was Serviced the day after the accident—and continued to be serviced prior to Plaintiff's inspection.**

However, no one in management told service technician Michael Johnson not to service the Yard Truck. (Johnson, 98:17-24). So, on the day after the accident, he performed maintenance on it. (Johnson, 83: 1-3; Ex. 138-139).  He noted many issues, including electronic failure, that all rear lights weren't working, the flood light was going out, the rear brakes needed to be replaced, the check engine light was flashing, the water temperature gauge wasn't working, and a door needed to be readjusted. (Johnson, 83-95). Johnson got approval and, on May 31, 2019, replaced lights. (Johnson, 98:12-18). On June 11, 2019, technician John Thomas repaired a step. (Jones, Ex. 36). On June 20, 2019, an outside vendor, "On-Site" replaced brakes, the 7-way electrical cord/pigtail connectors and the water temperature gauge, then adjusted the rear door and performed a "wet" (full) preventative maintenance service. (Garner, 28:7-15, 22:1-28:15, Ex. 144; Willis, 22-23: 25-7). The pigtail provides electricity to the trailer and when plugged in and operating properly, the pigtail activates the backing hazard lights, the trailer stop lights, turn signals, and flashers. (Cooper, 101:19-102:11; Cherepon, 149:15-150: 1-7; Fournier, 118:14:119:15). Brake

6

lights can offer information to those around, even in daylight and flashers offer information that the truck is moving. (Ketchum, 21:20-22:1; 27:11-17).

To have On-Site repair a vehicle requires Walmart to make a request. (Willis, 15:1-5;18:16-25; 24:1-3). Walmart never asked On-Site to preserve the parts it replaced, to record any measurements, to document the condition of the vehicle, or to video, photograph, or document the process. (Willis, 23-30). This left Plaintiff no way to know the state of the Yard Truck prior to the extensive repairs. (Willis, 28:7-15).

On June 23, 2019, a Walmart technician noted in a work order that the Yard Truck's "computer don't work, brakes need to be readjusted". (Jones, 102:10-103:17, Ex. 36).  The technician installed a new computer. (Jones, 102:10-103:17, Ex. 36; Zabala, 22:23-24-2). The maintenance record also notes the mechanic "[h]ad to inform manager (sic) Jose 2 times that yard driver did not bring truck to shop", an indication the Yard Truck was back in service and not preserved. (Jones, 102:10-103:17, Ex. 36).

### E.    Walmart received Plaintiff's Preservation Letter June 14, 2019.

On June 11, 2019, just twelve days after the wreck, Plaintiff's Counsel sent Walmart a "Request for Vehicle Inspection Evidence Preservation Notice/Spoliation Letter", identifying the Yard Truck by serial number and VIN, requesting it, along with maintenance and vehicle inspection reports and all video surveillance be preserved. (Garner, Ex. 181). On June 14, 2019, Walmart received the letter, yet the Yard Truck was worked on June 20th and 23rd. By June 24th, Walmart's counsel acknowledged receipt. (Evans, 69:16-170:6; Garner, Ex. 181, 182). After receipt, Walmart did nothing further to ensure the Yard Truck, the surveillance video, or the

Form 118s were preserved. (Evans, 79: 11-22). In fact, on June 25th, one day after Walmart acknowledged receipt, Walmart serviced the Yard Truck and noted the "hazard lights not working, and bushings where arm assembly raises fifth wheel close to the cab side, bushings are not in place." (Jones, Ex. 36).

**F.    Walmart Concealed the Spoliation from Plaintiff.**

On August 9, 2019, Plaintiff's expert inspected the site and the Yard Truck. (Cherepon, 148: 2-8).  At no point before, during, or after the inspection did Walmart tell Plaintiff about the repairs and maintenance. (Letter from Plaintiff's counsel to Defense Counsel dated September 1, 2021, Ex. A).  In fact, at the inspection, Walmart presented the Yard Truck to Plaintiff's expert locked with a cable -- and when he asked if any work or repairs had been done, Walmart falsely told him no. (Cherepon,165:1-6;147:13-49:9). On August 9, 2019, without being informed of the spoliation, Plaintiff acquiesced to Walmart's release of the Yard Truck back into service. (Ex. A).

In their Rule 26 Disclosures and responses to Plaintiff's Interrogatories, Walmart failed to list employees with knowledge of the condition of the Yard Truck, including Randy Garner, a manager who was at the scene and who was never given the directive to lockout the truck, and Michael Johnson, who was on the clock on the day of the accident and worked on the Yard Truck the day after the wreck. (See Defendants' Rule 26 Disclosures, attached as Ex. B; Defendants' Answers to Plaintiff's First Set of Interrogatories No. 7, attached as Ex. C; Garner 13:15-17; 38:7-39:6; 45:25-46:9; Jones 84: 17-85:17; Johnson 96:5-97:4; 25:16-22). Plaintiff's Counsel first learned of the spoliation on July 9, 2021, nearly two years after the inspection, when reviewing

Walmart's voluminous discovery, including out of sequence maintenance records. (Defendants' Responses to Plaintiff's First Request for Production, No. 28, Ex. D).

## G.   Walmart Cannot Explain the Lack of Preservation.

Walmart's corporate representative cannot explain why the Yard Truck was not preserved: "It should not have been repaired or maintained. I do not have an answer why this was done." (Evans, 37:15-22; *see also* 44:5-11; 47:18-23; 49:8-25; 50:8-11). He found no indication the managers/maintenance managers were informed the Yard Truck was to be locked out. (Evans, 28-29:8-5). Likewise, area maintenance manager Jones could not explain why the Yard Truck was worked on. (Jones, 19:4-14; 107:18-109:23). Neither Jose Zabala, a maintenance area manager, nor Maintenance Operations Manager Garner remembered receiving communication the Yard Truck was to be locked out. (Zabala, 6:25-7:6;14:21-15:7;  Garner,7:19-8:1;45:25-46:9). Zabala was the immediate supervisor of Johnson, the tech who performed the first maintenance and repairs.  (Johnson, 21-22: 25-25).

## H.   Walmart Failed to Preserve the Form 118.

Walmart failed to preserve the pre-operation checklist ("Form 118" or "118"), which was to be completed daily by the Yard Truck driver. (Cooper, 97: 21-23; 104:13-19; Jones, 30: 14-19; Zabala, 8-9; 19-9). Drivers were required to inspect parking and service brakes, lights, horn, tires, transmission, shifting, etc., and to list items needing attention. (Cooper, 85-86: 5-8; Jones Ex. 35).  The 118 would show which drivers had driven the yard truck. (Cooper: 96:10-97:12; Ketchum, 15:9-24). If brakes or lights aren't working, a driver is not authorized to use a yard truck. (Cooper, 103:8-104:17).

Form 118 for May 2019 was in the Yard Truck at the time of the accident. (Evans, 66: 2-7; Binnion, 37:11- 38: 23; Ex. 27). The 118s were to remain in the trucks for a month and to be preserved for two months. (Binnion, 38:15-23; Ex. 27; Jones: 32:2-6; Cooper: 96:20-23; Ex. 11; Evans; 66:16-19).   Walmart cannot explain what actions it took to preserve the 118 and cannot explain what happened to the form. (Evans, 69-73; <u>see</u> <u>also</u> Email from Walmart counsel dated June 22, 2022, attached as <u>Ex. E</u>: "Not sure how else one can tell you that 'no documents' means exactly that – no documents"). The Corporate Representative at one point asserted it may have been taken by the police, but photos taken by Walmart's expert, on-scene after law enforcement left, show the Form 118 still inside the Yard Truck after police left. (Evans, 66-67: 8-6; Fournier, 65:22-66:5; Hebson: 83:13-25; Womack 19:20-21:24).

## I.    The Surveillance Video Was Not Preserved.

There were cameras in the area near the wreck and Cooper reviewed the video as did Manager Smith and possibly law enforcement. (Cooper, 62:18-63:10; 73:11-12; 67:20-24; Cherepon, 124-131,132-33). It showed Tripp pulling into the gate, pulling around and backing up and may have shown Binnion's moves. (Cooper, 68:12-70:12, 71-72-74:19-1). Plaintiff requested surveillance video be preserved in the Preservation letter, then requested it in discovery. (<u>Ex. D</u>). Plaintiff sent a good faith letter on June 20, 2022, and Walmart responded there was no further evidence. (<u>Ex. E</u>). The Corporate Representative testified the video is not available. (Evans, 98:15-17).

### IV.     Memorandum of Law

"Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Graff v. Baja Marine Corp.*, 310 F. Appx 298, 301 (11th Cir. 2009). Rule 37(e) controls when electronically stored information is spoliated. With respect to tangible evidence, courts have inherent authority to impose sanctions. *Hyundai Motor Am. Corp. v. N. Am. Auto. Servs.*, 2021 U.S. Dist. LEXIS 136493, at *18 (S.D. Fla. July 22, 2021).

### A.     Spoliation of Tangible Evidence

To establish spoliation of tangible evidence, the movant "must initially prove three foundational elements: (1) that the missing evidence existed at one time; (2) that the alleged spoliator had a duty to preserve the evidence; and (3) that the evidence was crucial to the movant being able to prove its prima facie case or defense." *Hyundai Motor Am. Corp.* at *18.   While sanctions are appropriate only when there is evidence of bad faith, "[i]t has long been the rule that spoliators should not benefit from their wrongdoing [. . .]." *United Med. Supply Co.*, 77 Fed. Cl. at 263.   "Bad faith" in this context is a term of art: while mere negligence is not enough to establish bad faith, malice is also not required. *See Lidey v. Moser's Rides*, 2018 U.S. Dist. LEXIS 224287, at *7 (M.D. Fla. Sep. 7, 2018).   This is because a party cannot "recklessly disregard its obligation to preserve evidence without legal consequence." *United Med. Supply. Co.*, 77 Fed. Cl. at 258. "[B]ad faith in the context of spoliation, generally means destruction

11

for the purpose of hiding adverse evidence." *Ala. Aircraft Indus. v. Boeing Co.*, No. 20-11141, 2022 U.S. App. LEXIS 4039, at \*41 (11th Cir. Feb. 14, 2022).

An injured party may use circumstantial evidence to establish "bad faith", including that: (1) evidence once existed that could fairly be supposed to have been material to a claim at issue; (2) the spoliating party took an affirmative act causing the evidence to be lost; (3) and did so while it knew or should have known of its duty to preserve; and (4) the act cannot be credibly explained as not involving bad faith by the reason proffered by the spoliator. *Hyundai*, 2021 U.S. Dist. LEXIS 136493 at \*23.

### 1. The Three Foundational Elements Have Been Met

As a threshold matter, the three foundational elements to establish spoliation of tangible evidence have been met: (1) the Yard Truck and the Form 118 existed on the day of the accident; (2) Walmart had a duty to preserve the Yard Truck and the relevant evidence; and (3) the evidence is crucial to Plaintiff proving his prima facie case and to defending against Walmart's defenses.

#### a) *The Evidence Existed at One Time*

It is undisputed the Yard Truck and Form 118 existed on May 30, 2019.

#### b) *Walmart Had a Duty to Preserve Evidence*

It is also undisputed Walmart had a duty to preserve evidence as of day of the accident.  A claim for spoliation arises when litigation is reasonably foreseeable, and the party fails to preserve evidence. *See Graff v. Baja Marine Corp.*, 310 Fed. Appx. 298, 301 (11th Cir. 2009). A "litigant 'is under a duty to preserve what it knows, or reasonably should know, is relevant.'" *St. Cyr v. Flying J Inc.*, 2007 U.S. Dist. LEXIS

42502, at *8 (M.D. Fla. 2007).  Courts find reasonable foreseeability when a defendant admits it anticipated litigation or takes action consistent with anticipating litigation. *See Tesoriero v. Carnival Corp.*, 965 F. 3d 1180 (11th Cir. 2020); *Hagopian v. Publix Supermarkets*, 788 So. 2d 1088 (Fla. 4th DCA 2001).

In this case, Walmart's corporate representative and counsel have admitted Walmart had a duty to preserve evidence as of the day of the accident. (Evans,  44-44:11-10; 46: 10-19; 49:8-25; 62:2-9; 85:12-3).  Moreover, Walmart took actions consistent with anticipating litigation.  General Manager Smith and manager Cooper instructed Walmart staff to lock out the Yard Truck.  Walmart Risk Managers were at the scene during the police investigation and home office directed them not to investigate as they were "sending representation." Walmart's counsel and its retained accident reconstructionist were on site the day of the accident.  While Tripp fought for his life, Walmart gathered evidence for its defense and then, after getting what it needed, it repeatedly altered the Yard Truck and lost or destroyed the Form 118.

>    ***c)***      *The Evidence is Crucial to Plaintiff Being Able to Prove Its Case.*

The Yard Truck and the 118 Form are crucial to Plaintiff being able to prove both how the accident happened and that the lack of maintenance on the Yard Truck was a cause of the accident. Spoliated evidence is 'crucial' when its existence is necessary to prove the movant's prima facie case. *See Schultze v. 2K Clevelander, LLC*, 2018 U.S. Dist. LEXIS 172625, at *14 (Fla. S.D. 2018).  "In general, only 'outcome-determinative evidence' constitutes 'crucial' evidence." *Id*.

In *Flury*, the Eleventh Circuit found an allegedly defective vehicle in a crashworthiness case was crucial to the defendant's case and that the spoliation of it warranted dismissal. *Flury*, at 943. The plaintiff alleged he was injured as a result of a defective airbag. The defendant car manufacturer could not prove the airbag was not defective because the plaintiff had destroyed the evidence.

Plaintiff has brought claims for direct liability for failure to maintain the Yard Truck and negligent entrustment alleging that had the Yard Truck been in good working condition, the accident would have been avoided altogether because Tripp would have heard the backup alarm and seen the brake, flashing and rear lights as the Yard Truck moved past and in front of him. Additionally, had the Yard Truck's brakes worked properly, his injuries would have been minimized as the truck would have braked more quickly.

Before the Yard Truck struck Tripp, Binnion drove it in front of Tripp's bay, stopped, and reversed. (Fournier:120:4-15). Thus, working brake lights, flashers and turn signals could have offered Tripp information that would have prevented this tragedy. But Binnion's pigtail was not plugged in and because you "can't really see the lights in the day," but Walmart required the pigtails be plugged in and lights used, day or night. (Binnion: 32:22-25; Evans, 59:6-12). Plaintiff believes the reason Binnion did not use the pigtail was because it, along with other safety features, were not working, but Plaintiff will never be able to prove that. Additionally, the Form 118s may have shown the pre-checks weren't done, were done pro forma, or that maintenance issues were recorded, but ignored, all leading to the Yard Truck being used despite bad

brakes, non-working lights, a damaged pigtail and a faulty water temperature gauge. None on the Yard Truck's 118s were preserved, again eliminating evidence of Walmart's independent negligence.

Plaintiff's effort to prove Walmart's independent negligence caused the wreck has been thwarted by the spoliation of the Yard Truck's lights and connectors for the pigtail. Walmart's tech noted the day after the wreck that all rear lights were not working, and the pigtail's connectors were noted to need replacing. Walmart's pre-wreck failure to maintain the pigtails potentially rendered them incapable of powering the trailer lights. Alternatively, the Yard Truck's non-working rear lights may have been unable to trigger complementary lights on the trailer. Importantly, there is a dispute as to whether the backup alarm was functioning properly, because of the nature of the post-wreck repairs to the lights. (Cherepon, 152: 2-14).

Defendant's expert concedes that depending on the speed, the conditions of the brakes can affect the ability of a vehicle to slow and can affect the ability to stop while reversing. Further, he admits that even at speeds as low as 2 miles per hour, in most conditions brakes must be applied to bring a vehicle to a stop. (Fournier, 191:21-193:2). Tripp's body was dragged 23 feet by the Yard Truck and trailer. If Plaintiff knew the condition of the brakes, it would be able to show that, had the brakes been working properly, Tripp would not have been dragged and would have sustained less severe injuries. Walmart's spoliation denied Plaintiff access to evidence of the condition of the brakes, 7-way cord, truck lights and backup alarm as he seeks to prove

the independent negligence of Walmart, thus preventing Plaintiff from proving Walmart's independent negligence as alleged in Counts II and III.

The destroyed evidence is also critical to rebut Walmart's defenses.  Mr. Binnion testified the backup alarm was working on the day of the incident. (Binnion, 70:21-24); Tripp said he did not hear one. (Tripp, 157:18-20). Moreover, Walmart has made a claim for comparative negligence, alleging Tripp was using his cell phone at the time and generally "failed to use personal caution when crossing the lot." (Walmart's Answers to Plaintiff's First Set of Interrogatories, No. 6, Ex. C). If the Yard Truck had not been spoliated, Plaintiff could defend this claim with evidence the backup lights, flashers, brake lights and backup alarm were not working at the time of the accident, and therefore Mr. Tripp had inadequate notice of the impending danger. However, because of Walmart's spoliation, Plaintiff cannot refute Walmart's claim with proof of the evidence of the condition of the vehicle.

### 2.     Walmart Acted in Bad Faith.

Sanctions against Walmart are warranted because Walmart's actions in this case are clearly culpable and are much more than "mere negligence".  Courts "interpret 'bad faith' in the spoliation context to not require a showing of malice or ill-will, but rather conduct evidencing more than mere negligence." *Hyundai Motor Am. Corp.*, at *9.  Accordingly, bad faith "is defined by weighing 'the degree of the spoliator's culpability against the prejudice to the opposing party'." *Austrum v. Fed. Cleaning Contrs., Inc*, 149 F.Supp.3d 1343, 1351 (quoting *Flury*, 427 F.3d at 946). Bad faith exists where a party's actions caused the spoliation, and the responsible party understood the

significance of the evidence to the anticipated litigation. *Oil Equip Co. v. Modern Welding Co.*, 661 Fed. Appx. 646, 652 (11th Cir. 2016).

When determining issues of spoliation and bad faith, courts also take into consideration the sophistication of the spoliating party. *See Hyundai Motor Am. Corp.* at *34 (S.D. Fla. 2021)(sanctions were warranted because of "[t]he inexplicable failure by a large, sophisticated corporation" to preserve evidence in compliance with its policies).   "[W]hen a large corporate defendant such as Wal-Mart, an institution with significant power and financial resources, uses obstructive tactics to make litigation difficult for injured victims and their attorneys, a circuit court must deal with these tactics head-on and use its power to level the playing field." *Doe v. Wal-Mart Stores Inc.*, 210 W. Va. 664, 679 (W. Va. 2001). "Wal-Mart is a sophisticated business entity with a long track record of wrongfully destroying video footage and other evidence, and has been repeatedly sanctioned for this type of conduct." *Stedeford v. Wal-Mart Stores, Inc.*, U.S. Dist. LEXIS 83019, at *8 (D. Nev. June 24, 2016) *See also e.g. Britton v. Wal-Mart Stores E., L.P.*, 2011 U.S. Dist. LEXIS 86901 (N.D. Fla. June 8, 2011; *Alvarez v. Walmart, Inc.*, 2021 U.S. Dist. LEXIS 256318 (D. Nev. June 11, 2021); *Woodard v. Wal-Mart Stores E., LP*, 801 F. Supp. 2d 1363 (M.D. Ga. 2011).

A good example is *Oil Equipment*, a products liability action concerning an allegedly defective underground storage tank where the trial court dismissed the case, and the Eleventh Circuit upheld the dismissal when the plaintiff spoliated evidence. 661 Fed. Appx. 646 (11th Cir. 2016). In *Oil Equipment*, the plaintiff sued the

manufacturer alleging a manufacturing defect.  Prior to suit, the defense sent the plaintiff a letter requesting notification when it exhumed the tank so it could witness it and inspect the tank and the area. *Id.* at 647. However, the plaintiff removed the tank without providing defense notice and took steps during the removal process to show the tank was properly installed. *Id.* After removal, it took no steps to preserve it and then, during litigation, the plaintiff had destructive testing done without informing the defense. *Id.*

### a)    Bad Faith With Respect to the Yard Truck.

Walmart, a sophisticated litigant had a reconstruction team at the scene within an hour of the police leaving to "preserve evidence," apparently for Walmart's sole use in defending the case, because the day after the accident, instead of actually preserving evidence for use in litigation, Walmart began a series of repairs and maintenance on the Yard Truck -- and then concealed that fact from Plaintiff before, during, and after Plaintiff's inspection -- resulting in severe and uncurable prejudice.

Despite admitting it understood its duty to preserve evidence as of the day of the accident and despite a purported instruction to "lock out" the Yard Truck, Walmart inexplicably failed to adhere to any aspect of its own lockout procedures. Even *after* receiving Plaintiff's preservation letters, Walmart continued to service and repair it.  Walmart's actions indicates that Walmart employees were instructed "not to disturb" the truck or scene only until its accident reconstruction group inspected the vehicle (Garner, 53:6-24) and once that was done, Walmart did not take any steps to preserve evidence for Plaintiff. (Garner, 7-8:19-1; 45-46: 25-9).

18

Inconceivably, when Plaintiff performed its Yard Truck inspection in August 2019, Walmart told Plaintiff's expert no repairs had been done and even placed a cable and lock on the Yard Truck prior to the inspection, creating the false impression it had actually been preserved. In fact, Plaintiff did not have any notice of the service and repairs until years after the inspection when it reviewed discovery from Walmart. When Plaintiff realized the lack of preservation, it requested Walmart's lockout/tagout log.  But that is another item which Walmart "can't find." Walmart concedes the lockout/tagout log would have been covered by the June 11, 2019, spoliation letter. (Evans, 82:23-83:5).

Walmart's actions cannot be credibly explained as not involving bad faith.  It fully appreciated the significance of the Yard Truck to the litigation.   It is a sophisticated litigant that knows how to preserve evidence -- this is not the "mere negligence" of an unknowing mistake.  The Distribution Center Manager and Safety Manager testified the Yard Truck was to be locked out. Despite this, brakes, lights, fuses, electrical connectors to the trailer and temperature gauge and computer were replaced and long overdue maintenance was performed.  Walmart's culpability is clear and the prejudice to Plaintiff cannot be overstated: Walmart had its expert out on the day of the accident, developing its theory of the case, examining the Yard Truck and determining how best to defend a potential suit.  Walmart then destroyed Plaintiff's chance to inspect the Yard Truck and its chance to prove the Yard Truck was faulty and caused the accident. And then Walmart covered it up.

*b)  Bad Faith With Respect to the Form 118*

19

Walmart has admitted that it should have preserved the Form 118 and further, because 118s were to be saved a matter of course, the form should have still been in existence when Walmart received Plaintiff's preservation letter just 15 days after the accident.   However, Walmart's corporate representative testified there was no procedure in place to preserve evidence upon receipt of a preservation letter, and that when it received the preservation letter it took no action to preserve evidence.   A sophisticated litigant like Walmart not having a litigation hold policy in place should be considered per se bad faith.   Further, with or without a policy, to have received a preservation letter after a horrific accident like this and take absolutely no action to preserve evidence is certainly more than "mere negligence."

**B.**   Sanctions Under Rule 37(e) Are Warranted for the Spoliation of the Surveillance Video

Federal Rule of Civil Procedure 37(e) governs spoliation of electronically stored information.   Rule 37(e) "forecloses reliance on inherent authority or state law to determine when certain measures should be used." Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment.   Rule 37(e)provides:

> **Failure to Preserve Electronically Stored Information.** If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced though additional discovery, the court:
>> (1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or
>> (2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:

20

> (A) presume that the lost information was unfavorable to
> the party;
> (B) instruct the jury that it may or must presume the
> information was unfavorable to the party; or
> (C) dismiss the action or enter a default judgment.

Fed. R. Civ. P. 37(e).

First, as discussed above, there was a duty to preserve evidence. "Rule 37(e) 'does not attempt to create a new duty to preserve.' Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment. 'Rather, the rule operates in conjunction with the 'common-law obligation to preserve.'" *Ala. Aircraft Indus. v. Boeing Co.* at *38.

Second, Walmart failed to take reasonable steps to preserve the video and acted with an intent to deprive Plaintiff of its use. The "intent to deprive" analysis is equivalent to "bad faith." *Id.* at *41. Despite a duty to preserve evidence and despite receiving a preservation letter explicitly requesting preservation of all surveillance video, Walmart has no explanation of what happened to the video and why it wasn't preserved. A Walmart employee said he viewed some video, saw Tripp's vehicle, and believes he saw Binnion's moving in the yard. General Manager Smith said he sent the video to Counsel. (Smith, 53:5-18). Nothing has been produced. Walmart's counsel and corporate representative has claimed it doesn't exist. Given the evidence, this lack of explanation cannot be seen as "mere negligence."

Lastly, Plaintiff was prejudiced by Walmart's action with regard to the video. While Rule 37(e) does not place a burden of proving or disproving prejudice on one party or another, it recognizes that "placing the burden of proving prejudice on the party that did not lose the information may be unfair." Fed. R. Civ. P. 37(e) advisory

committee's note to 2015 amendment, Note to Subdivision (e)(1).  Video of Binnion driving in the yard would have been crucial to proving Plaintiff's case.  As a critical part of its defense, Walmart alleges Binnion was driving at a walking speed. (Fournier: 198:18-201:6).  Footage of Binnion driving before the accident at higher speeds would have been crucial to proving Tripp's case.

### C.    The Sanction of Default Judgment Is Warranted

"[S]anctions for discovery abuses are intended to prevent unfair prejudice to litigants and to insure the integrity of the discovery process." *Hyundai Motor Am. Corp.*, at *17-18 (S.D. Fla. July 22, 2021), *quoting Flury,* 427 F.3d at 944. Courts have "broad discretion" to impose sanctions which "derives from the court's inherent power to manage its own affairs and to achieve the orderly and expeditious disposition of cases." *Flury at 944.* When determining the seriousness of the sanctions to impose, factors "vary according to (1) the willfulness or bad faith of the party responsible for the loss or destruction of the evidence; (2) the degree of prejudice sustained by the opposing party; and (3) what is required to cure the prejudice." *Bellay v. Shue,* 2022 U.S. Dist. LEXIS 139778, at *39 (M.D. Fla. Aug. 5, 2022) (quoting *St. Cyr v. Flying J Inc.*, 2007 U.S. Dist. LEXIS 42502 (M.D. Fla. June 12, 2007)).

Sanctions for spoliation include "(1) dismissal of the case; (2) exclusion of expert testimony; or (3) a jury instruction on spoliation of evidence which raises a presumption against the spoliator." *Flury*, at 945. "Because dismissal is the most severe sanction available, it 'should only be exercised where there is a showing of bad faith

and where lesser sanctions will not suffice.'" *Oil Equip. Co.*, 661 Fed. Appx. At 652-3 (quoting *Flury* at 944). Dismissal may be warranted where the spoliation deprives the opposing party of an opportunity to put on a complete case. *Flury* at 947. In *Flury*, the Eleventh Circuit directed dismissal of plaintiff's defective vehicle case, finding "the extraordinary nature of plaintiff's actions coupled with extreme prejudice to the defendant" not curable by any other sanction warranted dismissal. *Flury* at *10.

In this case, Plaintiff has been severely prejudiced. Because of Walmart, Plaintiff cannot prove the defective/inoperable brakes, lights, electrical supply cord to the trailer and backup alarm were a cause of the accident.  Walmart seized the opportunity to selectively document items that would help it in its defense and then assured Plaintiff's disadvantage by systematically destroying evidence it deemed potentially harmful. Walmart's repeated and blatant disregard and violations of its own policy, the discovery rules, its preservation obligations, and the preservation request sent by Plaintiff are inexcusable. Walmart anticipated litigation the day of the accident yet serially repaired and serviced the Yard Truck beginning the very next day. Even after Plaintiff's Counsel sent a preservation letter, Walmart continued to allow unfettered repairs, parts replacement, and service to the Yard Truck without informing Plaintiff of the spoliation.

The potential for abuse is great if sanctions are not imposed.  Walmart is a party in many types of litigation. If the Court allows Walmart's spoliation to go unchecked, it could continue to undermine the integrity of the process. Because of the egregious nature of Walmart's actions and because of the severe prejudice to Plaintiff, Plaintiff

requests this Court enter a judgment in Plaintiff's favor as to Counts II and III of the Third Amended Complaint, or, alternatively provide a jury instruction which deems the negligent maintenance of the Yard Truck a cause of the accident. Plaintiff also requests this Court strike Walmart's affirmative defense of comparative negligence because Plaintiff can't use the lack of working safety features on the Yard Truck to defend against Walmart's contention that Tripp wasn't paying attention. Plaintiff requests this Court strike Walmart's accident reconstruction expert, Donald Fournier, because his opinions are based in part on his team's access to evidence on the day of the accident, access to which Plaintiff was permanently deprived via spoliation.

Plaintiff also requests this Court enter an Order charging attorney's fees and costs for bringing this Motion, for the additional discovery Plaintiff was forced to undertake as a result of the spoliation, including the costs and fees associated with the second inspection and the numerous depositions needed to investigate the spoliation, and for any other relief this Court deems appropriate.

WHEREFORE, based on the foregoing arguments and authority, Plaintiff respectfully requests this Court (1) (a) enter default judgment against Walmart as to Counts II and III of the Third Amended Complaint or, (b) alternatively, provide a jury instruction on spoliation of evidence which deems the negligent maintenance of the yard truck a cause of the accident, and (2) strike Walmart's defense of comparative negligence, (3) strike the expert testimony of Walmart's accident reconstruction expert, Donald Fournier, (4) charge attorneys' fees and costs against Walmart for the

hours and resources Plaintiff has expended unraveling the extent of the spoliation, and (5) order any other sanctions or relief this Court deems appropriate.

## Local Rule 3.01(g) Certification

Counsel for Plaintiff certifies they have conferred in-person, via telephone and email and counsel for Walmart has indicated that Walmart opposes the motion and the relief requested.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 14th day of September, 2022, a true and correct copy of the foregoing document was filed via electronic transmission which provides notice to opposing counsel Kevin C. Schiferl, Jeffrey Benson, and Daniel J. Santaniello, KSchiferl@FBTLaw.com; LuksTpa-Pleadings@LS-Law.com; JBenson@InsuranceDefense.net, and declares and certifies that Exhibit A and Exhibit E to this Motion, are true and accurate copies of such communications.

Respectfully Submitted, this 14th day of September 2022.

| FORREST   B.   JOHNSON   &  ASSOCIATES | FORREST   B.   JOHNSON   &  ASSOCIATES |
|---|---|
| */s/ Forrest B. Johnson* | */s/ Stanford Klinger* |
| FORREST B. JOHNSON, ESQ. | STANFORD KLINGER, ESQ. |
| Florida Bar No.: 0272957 | Georgia Bar No.: 425191 |
| *Attorneys for Plaintiff* | *Pro Hac Vice* |
| | *Attorneys for Plaintiff* |

1745 MLK Jr. Drive, NW
Atlanta, GA 30314
Telephone: 404-758-9111
Facsimile: 888-298-0458
E-mail:  ForrestJohnson@FBJLaw.com
E-mail:  StanKlinger@gmail.com
E-mail:  RachelPinkston@FBJLaw.com