## UNITED STATES DISTRICT COURT MIDDLE DISTRICT OF FLORIDA TAMPA DIVISION

IRWIN TRIPP,

       Plaintiff,

v.                               Case No: 8:21-cv-510-WFJ-SPF

WALMART, INC. and WAL-MART STORES EAST, L.P.,

       Defendants.

_____/

## ORDER

Before the Court is Walmart, Inc. and Wal-Mart Stores East, L.P.'s (collectively "Defendants") Motion for Partial Summary Judgment (Dkt. 105). Irwin Tripp ("Plaintiff") has responded in opposition (Dkt. 126), and Defendants have replied (Dkt. 129). With the benefit of full briefing and able argument by both sides, the Court denies Defendants' motion.

## FACTUAL BACKGROUND

On May 29, 2019, Defendants hired Plaintiff, an independent tractor-trailer driver, to deliver a load of goods to the Walmart distribution center located at 5600 Lucerne Park Road, Winter Haven, Florida (the "Distribution Center"). Dkt. 64 at 4. Plaintiff arrived at the Distribution Center the next morning, backed into Bay 54, and went through the process of securing and unhooking his trailer. *Id.* at 5–6.

After completing the docking process, Plaintiff exited his tractor cab and walked to the Distribution Center's Central Receiving Office (the "Office") to exchange paperwork. Dkt. 107-1 at 84–85. He then returned to his cab in Bay 54. *Id*. Plaintiff waited there for further instruction. *Id.*

Eventually, Plaintiff received a call from an employee in the Office. *Id.* at 89; Dkt. 64 at 6. The employee instructed Plaintiff to head over to the Office again for another exchange of paperwork. Dkt. 64 at 6; Dkt. 107-1 at 89. Plaintiff consequently opened his cab door, stepped down backwards into the demarcated zone between Bay 54 and Bay 55, and turned around to make sure that the green light above his trailer was on, which would signify that his delivery had been unloaded. Dkt. 107-1 at 112.

At approximately the same time, Joshua Binnion, an employee of Defendants, was operating Terminal Tractor unit M0007 (the "yard truck") with an attached trailer. As Mr. Binnion backed into Bay 55, he felt a "jolt." Dkt. 81 at 61. Unsure what had happened, Mr. Binnion stopped the yard truck, threw it in neutral, and popped his breaks. *Id.* at 62. When Mr. Binnion got out, he realized that he had hit and dragged Plaintiff with the yard truck's attached trailer. *Id.* Mr. Binnion immediately "called on the radio for help." *Id.* at 75.

Fortunately, Plaintiff survived. He nevertheless sustained catastrophic injuries requiring prolonged hospitalization. Dkt. 107-1 at 170. Currently, Plaintiff

is confined to a wheelchair, as both of his legs were lost due to the accident. *Id.* at 168.

## PROCEDURAL BACKGROUND

On December 5, 2021, Plaintiff filed his Third Amended Complaint. Dkt. 64. Therein, Plaintiff alleges five counts against Defendants: (Count I) negligence under a vicarious liability theory for the negligent acts of Mr. Binnion; (Count II) negligence under a direct liability theory for Defendants' failure to maintain the yard truck; (Count III) negligence under a direct liability theory for Defendants' negligent entrustment of the yard truck to Mr. Binnion; (Count IV) negligence under a direct liability theory for Defendants' failure to maintain the Distribution Center in a reasonably safe condition; and (Count V) negligence under a direct liability theory for Defendants' failure to warn Plaintiff of the concealed danger of walking through the area where Mr. Binnion was operating the yard truck. *Id.* at 8– 20. Defendants admit responsibility "for the negligent acts of [Mr. Binnion] acting in the course and scope of his employment, if any[.]" Dkt. 65 at 3. Defendants otherwise deny all liability and raise three affirmative defenses.[1] *Id.* at 3–7.

---

[1] Defendants' affirmative defenses include: (1) Defendants are entitled to a set-off of any recovery rendered against ithem; (2) Plaintiff failed to mitigate or minimize his damages; and (3) any recovery by Plaintiff should be reduced pursuant to the Florida Comparative Fault Act, Section 768.81, Florida Statutes. Dkt. 65 at 6–7.

Following a contentious discovery period, Defendants filed for partial summary judgment, requesting that summary judgment be granted on Counts II-V of Plaintiff's Third Amended Complaint. Dkt. 105 at 2–3. Plaintiff "stipulates to dismissal of Counts IV and V . . . [and] requests this Court deny [Defendants'] motion . . . as to Counts II and III[.]" Dkt. 126 at 1.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996). An issue of fact is "genuine" only if "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if the fact could affect the outcome of the lawsuit under the governing law. *Id.*

The moving party bears the initial burden of identifying those portions of the record demonstrating the lack of a genuinely disputed issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If met, the burden shifts to the non-moving party to "come forward with specific facts showing that there is a genuine issue for trial." *Shaw v. City of Selma*, 884 F.3d 1093, 1098 (11th Cir. 2018) (citation omitted). To satisfy its burden, the non-moving party "must do

more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The non-moving party instead must go beyond the pleadings and "identify affirmative evidence" that creates a genuine factual dispute. *Crawford-El v. Britton*, 523 U.S. 574, 600 (1998).

In determining whether a genuine dispute of material fact exists, the Court must view the evidence and draw all factual inferences therefrom in a light most favorable to the non-moving party. *Skop v. City of Atlanta*, 485 F.3d 1130, 1136 (11th Cir. 2007). In addition, the Court must resolve any reasonable doubts in the non-moving party's favor. *Id.* Summary judgment should only be granted "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party[.]" *Matsushita*, 475 U.S. at 587.

## DISCUSSION

Defendants maintain that summary judgment is proper as to Counts II and III for two reasons: (1) because Defendants admit that Mr. Binnion was acting in the course and scope of his employment at the time of the incident, Plaintiff cannot bring direct negligence claims against Defendants in addition to Plaintiff's vicarious liability claim; and (2) "[e]ven if this Court determines that Plaintiff can bring concurrent negligence claims against [Defendants], [Counts II and III] are duplicative and the undisputed evidence shows that any alleged maintenance issues

with the [yard truck] were irrelevant and immaterial to the incident." Dkt. 105 at

5–10. The Court will consider each argument in turn.

## I.    Vicarious and Direct Liability

Defendants base their first argument on a line of cases in which Florida

courts have held that where "a plaintiff alleges and a defendant admits that the

alleged torts took place during the course and scope of employment, employer

liability can only be pursued on the basis of respondent superior and not on the

basis that the employer was negligent." *Delaurentos v. Peguero*, 47 So. 3d 879,

882 (Fla. 4th DCA 2010) (citations omitted). As previously mentioned, Defendants

admit that Mr. Binnion was acting in the course and scope of his employment at

the time of the incident. Defendants therefore argue that *Delaurentos* functions to

preclude Plaintiff's direct negligence claims (Counts II and III).

The Court disagrees. While the language of these cases appears to support

Defendants' position,[2] a deeper examination of the caselaw reveals that

*Delaurentos*' limitation on simultaneously pursuing vicarious and direct employer

liability is itself limited to fact patterns wherein direct employer negligence

---

[2] *See Delaurentos v. Peguero*, 47 So. 3d 879, 880–82 (Fla. 4th DCA 2010) (finding that a plaintiff's only viable theory of liability against a defendant employer is respondent superior where an employee acts within the scope of employment and the defendant employer is sued under a vicarious liability theory as well as a direct liability theory based in negligent hiring, training, retention, and supervision); *Buckler v. Israel*, 680 F. App'x 831, 834 (11th Cir. 2017) (same); *Reyes v. Werner Enterprises, Inc.*, No. 16-21883-CIV, 2017 WL 3776826, at *1 (S.D. Fla. Aug. 30, 2017) (same).

theories "impose no additional liability." *Clooney v. Geeting*, 352 So. 2d 1216, 1220 (Fla. 2d DCA 1977) (finding that "[w]here [direct employer negligence] theories impose no additional liability in a motor vehicle accident case, a trial court should not allow them to be presented to the jury"); *see also Widdows v. Dwaine Wilcox & Trucks, Inc.*, No. 3:20-CV-799-J-39PDB, 2020 WL 13133419, at *4 (M.D. Fla. Nov. 19, 2020), *adopted by Widdows v. Wilcox*, No. 3:20-CV-799-BJD-PDB, 2021 WL 7708907 (M.D. Fla. Mar. 12, 2021) (finding that a direct negligence claim and a vicarious liability claim against a defendant employer are both viable where the plaintiff alleges direct negligence by the defendant employer that would make the defendant employer responsible independent of any negligence of the employee); *Sanchez v. Disc. Rock & Sand Inc.*, No. 4:18-CV-10097-KMM, 2022 WL 832429, at *6 (S.D. Fla. Feb. 9, 2022) (finding that an exception to *Delaurentos* exists where there is sufficient evidence for a jury to find that an employer negligently entrusted an improperly maintained vehicle to an employee that contributed to an accident); *Wilson v. Davis*, No. 8:21-CV-1713-TPB-TGW, 2022 WL 7568315, at *2 (M.D. Fla. Oct. 13, 2022) (finding that "[a] direct negligence theory might also be viable where the plaintiff alleges that the defendant acted negligently in providing a defective vehicle to the driver, such that the defendant might be liable even if the driver is found not to have been negligent").

Furthermore, in *Clooney*, Florida's Second District Court of Appeal expressly recognized that:

> factual situations could arise where [direct employer liability] theories would impose additional liability. If the allegations in this case had been sufficient to allow the claim for punitive damages to go before the jury, this would be such a case. Another example might be where an owner or authorized custodian of a motor vehicle who knows that the vehicle has defective brakes allows one who is not aware of this dangerous condition to use it, and because of the bad brakes an accident occurs. If the driver were found not to be negligent, the owner could not be held vicariously liable. So the means of imposing liability on the owner would be through his own negligence of lending the car with bad brakes, i. e., negligent entrustment.

352 So. 2d at 1220. Plaintiff's concurrent negligence claims closely mirror this second example. Counts II and III collectively allege that Defendants negligently maintained the yard truck and allowed Mr. Binnion to use it. They also allege that Defendants' negligent maintenance causally contributed to the accident by way of defective lights, alarms, and breaks. Accordingly—unlike the cases Defendants rely on to limit Plaintiff to Count I—this is not a scenario where a finding of employee non-liability would necessitate a finding of employer non-liability. Rather, if proven, Plaintiff's allegations of Defendants' direct negligence in (1) failing to maintain the yard truck and (2) knowingly entrusting the yard truck to Mr. Binnion would render Defendants liable for the accident independent of any negligence by Mr. Binnion. In this context, courts have allowed plaintiffs to

proceed simultaneously on both vicarious and direct liability theories. *See Widdows*, 2020 WL 13133419, at *4; *Sanchez*, 2022 WL 832429, at *6.

Anticipating this issue, Defendants argue that the *Clooney* exception is inapplicable because "none of the alleged maintenance issues [with the yard truck] caused or would have prevented the subject incident." Dkt. 105 at 7. Perhaps, but these are genuinely disputed issues of material fact that the Court has no authority to resolve through summary judgment. *See Skop*, 485 F.3d at 1136. Indeed, Plaintiff has identified affirmative evidence that would allow a reasonable jury to find that the alleged maintenance issues were a cause of the accident. This evidence includes, among other things, the testimony of Plaintiff's accident reconstruction expert Andrew Cherepon:

> So what I started to explain is lights, the importance of lights . . . aside from their usefulness at night as far as providing say headlights so you can actually see the road in front of you as you're driving, lights are partially there for communication. So when you see brake lights they get brighter, you know somebody is slowing. When you see a turn signal, you know somebody is going to be turning. That's the importance of lights. As far as the lights in this case from my observations from both visits to the distribution center the yard tractor drivers would put their emergency flashers on when they backed, and I actually have a couple of videos I was able to get while I was there demonstrating that. So when I talk about context that is potential context that those lights could provide if they're operational and working. As far as the alarm I think that's something that is -- well, it is something that's required on commercial vehicles. So when you hear that alarm in a distribution center it gives you the context that a vehicle is backing.

Dkt. 83 at 31. As noted above, the Court must view the evidence and draw all factual inferences therefrom in a light most favorable to the non-moving party. *Skop*, 485 F.3d at 1136. Whether Plaintiff or Mr. Binnion actually "saw or heard one another prior to the incident" is therefore immaterial because, based on the evidence, it is reasonable to infer that Plaintiff would have noticed Mr. Binnion had the alleged maintenance issues not existed. Dkt. 105 at 8.

The Court consequently finds that Plaintiff is not precluded from bringing concurrent vicarious and direct liability theories claims against Defendants.

## II.   Duplicity and Relevance

Defendants' alternative arguments are not dispositive. To begin with, while the Court recognizes that whether Defendants negligently entrusted the yard truck to Mr. Binnion (Count III) largely depends on whether Defendants negligently failed to maintain the yard truck (Count II), these claims present distinct legal theories and contain non-overlapping factual allegations. As Plaintiff notes, "[t]he negligent entrustment theory requires a showing that the entrustor knew or should have known some reason why entrusting the item to another was foolish or negligent." *Mullins v. Harrell for Use & Benefit of Auto Owners Ins. Co.*, 490 So. 2d 1338, 1340 (Fla. 5th DCA 1986) (citation omitted). Plaintiff's failure to maintain theory, on the other hand, merely requires a showing that Defendants breached an existing duty of reasonable care (or a statutory duty) by not

maintaining the yard truck and its attached trailer in a reasonably safe condition. Accordingly, Counts II and III are not duplicative.

In addition, it is simply not true that "whether the rear lights and their various components were functioning is irrelevant because [Plaintiff] testified that he did not see [Mr. Binnion] before the incident and his back was turned and looking at his trailer to make sure that the light was green." Dkt. 105 at 9. As explained above, the Court must draw all factual inferences from the evidence in a light most favorable to Plaintiff. *Skop*, 485 F.3d at 1136. In this light, it is reasonable to infer that the aforementioned light and alarm maintenance issues contributed to Plaintiff not sensing Mr. Binnion before the incident. It is also reasonable to infer that Plaintiff's injuries were increased by the allegedly defective breaks, as they may have caused Plaintiff to be dragged a substantial distance after he was struck by the yard truck's attached trailer. The functionality of the rear lights, alarm, and breaks is therefore relevant.

## CONCLUSION

For the reasons expressed above, the Court concludes that summary judgment disposition of Counts II and III is inappropriate. Counts II and III present relevant and viable direct employer negligence claims. They will be resolved by the jury at trial.

Accordingly, it is hereby **ORDERED** and **ADJUDGED**:

(1)  Defendants' Motion for Partial Summary Judgment (Dkt. 105) is

**DENIED**.

**DONE AND ORDERED** at Tampa, Florida, on November 9, 2022.

*/s/ William F. Jung*
**WILLIAM F. JUNG**
**UNITED STATES DISTRICT JUDGE**

**COPIES FURNISHED TO**:
Counsel of Record