# UNITED STATES DISTRICT COURT MIDDLE DISTRICT OF FLORIDA TAMPA DIVISION

IRWIN TRIPP,

    Plaintiff,

v.                                                                                  Case No: 8:21-cv-510-WFJ-SPF

WALMART, INC. and WAL-MART
STORES EAST, L.P.,

    Defendants.
_____/

## ORDER

Before the Court is Plaintiff Irwin Tripp's motion to exclude the testimony of Defendants Walmart, Inc. and Wal-Mart Stores East, L.P.'s expert, Donald J. Fournier (Dkt. 108). Defendants have responded in opposition (Dkt. 123), and Plaintiff has not replied. Upon careful consideration, the Court denies Plaintiff's motion.

## LEGAL STANDARD

"*Daubert* requires that trial courts act as 'gatekeepers' to ensure that speculative, unreliable expert testimony does not reach the jury." *McCorvey v. Baxter Healthcare Corp.*, 298 F.3d 1253, 1256 (11th Cir. 2002); *see also Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993). In carrying out this role pursuant to Federal Rule of Evidence 702, trial courts consider whether:

> (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert;* and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

*United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004) (citations omitted). Still, "[t]he inquiry envisioned by Rule 702 is . . . a flexible one," *Daubert*, 509 U.S. at 595, and courts should not elevate themselves "to the role of St. Peter at the gates of heaven, performing a searching inquiry into the depth of an expert witness's soul—separating the saved from the damned[,]" *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1321 (11th Cir. 1999) (citations and internal quotations omitted). For "[s]uch an inquiry would inexorably lead to evaluating witness credibility and weight of the evidence, the ageless role of the jury." *Id.*

## DISCUSSION

Plaintiff moves to exclude the expert testimony of accident reconstructionist Donald J. Fournier regarding the path and speed of the vehicle involved in Plaintiff's accident for two reasons: (1) Mr. Fournier's methodology is unreliable, and (2) Mr. Fournier's opinions will not assist the trier of fact. Dkt. 108 at 6, 17. The Court will consider Plaintiff's arguments in turn.

### I.   Reliability

Plaintiff first argues that Mr. Fournier's methodology is unreliable because Mr. Fournier failed to control for "measurement loading," a "phenomenon by

which participants in an experiment behave differently when they know they are being observed." *Id.* at 8. According to Plaintiff, "[Mr.] Fournier's test drivers (1) knew they were being observed and recorded; (2) knew there were obstacles, including [Mr.] Fournier standing near the truck; and (3) were given progressively different instructions on how to maneuver the truck and trailer." *Id.* Plaintiff consequently maintains that Mr. Fournier's methodology influenced his test drivers' performance and that his resulting opinions should be excluded.

The Court disagrees. As an initial matter, there is limited dispute concerning whether Mr. Fournier influenced his test drivers. According to Mr. Fournier's Affidavit:

> [During the April 7, 2022 testing,] I initially asked each driver to back into the space so that I could observe how they would set up for the turn and back into the space. After observing the first driver, I asked him to back up as fast as he was comfortable and to steer as far right as he was comfortable. I then made the same initial request of the second driver. After the first run, I asked him to back into the space as fast as he was comfortable and as far to the right as he was comfortable. The blood evidence on the yellow line indicates the position of the passenger side trailer wheels and it was my goal to have the trailers track that path to match the physical evidence.

Dkt. 123-1 at 8. It is therefore clear that "[Mr.] Fournier acknowledges significant instruction to the test drivers beyond telling them to simply drive southbound and park in the subject bay[.]" Dkt. 108 at 12. It is also clear that, to some extent, Mr. Fournier acknowledges the influence his presence had on one of his test drivers during that driver's initial test run. Dkt. 82 at 52.

This, however, does not render Mr. Fournier's methodology unreliable. "As other courts have recognized, 'motion practice regarding the reliability of accident reconstructionists . . . is highly fact dependent.'" *Handley v. Werner Enters. Inc.*, No. 7:20-CV-235-WLS, 2022 WL 229891, at *2 (M.D. Ga. Jan. 25, 2022) (quoting *Honor v. USA Truck, Inc.*, No. 8:18-CV-677-T-CPT, 2020 WL 487151, at *13 n.3 (M.D. Fla. Jan. 30, 2020)). Here, the facts show that Mr. Fournier was attempting to reconstruct the subject accident based on Joshua Binnion's deposition testimony that "I back up fast" as well as the forensic evidence related to the path of the trailer wheels. Dkt. 81 at 61; Dkt. 138-5 at 1.

It follows that Plaintiff's measurement loading argument is largely theoretical. To be sure, the Court agrees with Plaintiff's expert Kelly Kennett's statement that:

> Mr. Fournier seeks to analyze an unknown event (i.e., the subject incident) by observing and measuring other backing events. That in and of itself is not invalid: what is invalid, however, is altering the test events based upon your perception of the subject event, which is the very thing you are trying to experimentally determine.

Dkt. 108 at 13. But Mr. Fournier did not alter the test events based solely upon his perception of the subject accident. As noted above, Mr. Fournier altered the test in an attempt to reconstruct the accident in a way that incorporated the evidence contained in the record. This reliance is appropriate. *See Calta v. N. Am. Arms, Inc.*, No. 805-CV-1266T-MSS, 2007 WL 4800641, at *7 (M.D. Fla. Nov. 27,

2007) (finding that an expert's "reliance on the evidence as provided to him is appropriate as experts regularly testify based on hypotheticals").

Of course, the Court recognizes that Mr. Fournier's methodology is imperfect. It is not ideal to include sample test runs in a study which are possibly slowed by a test driver's awareness of obstacles. Similarly, it is not disputed that observation can impact a test participant's behavior, thereby altering results where no controls exist.

All the same, these issues do not diminish the reliability of Mr. Fournier's opinions to the level of inadmissibility. The Eleventh Circuit has identified several pertinent factors which should be considered in ascertaining whether an expert's methodology meets the reliability standard under the second *Daubert* prong: "(1) whether the expert's methodology can be tested; (2) whether the expert's scientific technique has been subjected to peer review and publication; (3) whether the method has a known rate of error; [and] (4) whether the technique is generally accepted by the scientific community." *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1292 (11th Cir. 2005) (citation omitted). As evidenced by the peer reviewed paper *Analysis of Acceleration in Passenger Cars and Heavy Trucks* co-authored and provided by Mr. Fournier, these factors counsel towards admission. Dkt. 123-1 at 20. Plaintiff presents no argument to the contrary. Moreover, as Defendants note, "[a] number of federal district and circuit courts have held that the expert

testimony of accident reconstructionists is admissible." *Erving v. Unicorn Exp., LLC*, No. CV 407-CV-84, 2008 WL 8746303, at *2 (S.D. Ga. July 1, 2008) (collecting cases).

Plaintiff's second and third reliability arguments do not alter the Court's analysis. Whether Mr. Fournier used drivers, trucks, or trailers of exacting similarity to Mr. Binnion, the subject yard truck, or the subject trailer presents a question of evidentiary weight, not admissibility. *See Garcia v. Kelly-Springfield Tire Co.*, No. 8:99-CV-1611-T-17TGW, 2004 WL 6047327, at *2 (M.D. Fla. Mar. 12, 2004) (finding that "courts have permitted expert testimony based on accident reconstruction that did not involve the actual vehicle" and that the movant's objection went to weight rather than admissibility). The same can be said of whether the nine test runs Mr. Fournier conducted are representative of what might happen on a tenth or eleventh run. *See Bostick v. State Farm Mut. Auto. Ins. Co.*, 321 F.R.D. 414, 417 (M.D. Fla. 2017) (finding that "[a]n argument against data or facts used in calculations does not discredit the methodology" and goes more to the weight of the evidence than the admissibility of the evidence under *Daubert*).

Accordingly, while there is a large "universe of considerations that may bear on the reliability of a given expert opinion, and a federal court should consider any additional factors that may advance its Rule 702 analysis[,]" *Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1341 (11th Cir. 2003), the Court

finds that none of the considerations presented by Plaintiff bear so heavily on reliability as to render exclusion appropriate. *See Daubert*, 509 U.S. at 596 (finding that "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence," and that "[t]hese conventional devices, rather than wholesale exclusion under an uncompromising 'general acceptance' test, are the appropriate safeguards where the basis of scientific testimony meets the standards of Rule 702").

## II.     Helpfulness

Plaintiff's final argument for excluding the testimony of Mr. Fournier is that Mr. Fournier's opinions will not aid the jury because they "are not tied to the undisputed facts of the case and are at odds with the testimony of [Mr.] Binnion regarding how the accident happened." Dkt. 108 at 17. The Court finds that this argument largely represents an attempt to reframe Plaintiff's reliability arguments so as to directly challenge Mr. Fournier's conclusions. Either way, it is not dispositive.

First, as mentioned above, Mr. Fournier's opinions are reasonably tied to the evidence in the record concerning speed. Plaintiff takes particular issue with the fact that—despite knowing that Mr. Binnion was a "fast backer" with only a short time frame to pick up and relocate the subject trainer—Mr. Fournier did not place

time constraints on the two drivers involved in his testing. Dkt. 108 at 18. This wholly ignores Mr. Fournier's instructions to his test drivers to back as quickly as they could within their zone of comfort.

Second, Mr. Fournier's opinions are reasonably tied to the evidence in the record concerning pathing. As Mr. Fournier explains, prior to his physical testing:

> I worked with an engineer on my team, Charlie King, to video the movement of yard trucks with trailers. We documented 17 separate truck movements without the knowledge of the drivers and summarized these movements in Table 1 of my report and produced each of the videos to Plaintiff. Of the 17 movements, three were initial right turns followed by backing into a warehouse bay space. All three movements were consistent with the description offered by Mr. Binnion in his deposition. Notably, these naturalistic observations were done without the knowledge of the drivers who were naïve to being observed and provided the best examples of driving behavior.

Dkt. 123-1 at 6–8. Mr. Fournier used these observations in conjunction with both the forensic evidence he collected on the day of the accident and Mr. Binnion's testimony to reconstruct the accident in his subsequent testing. Hence, Plaintiff's reliance on *Korsing v. United States*, No. 16-22190-CIV, 2017 WL 7794276, at *4 (S.D. Fla. Aug. 24, 2017) is misplaced. There, the expert's opinion was directly contradicted by the record and supported only by that expert's *ipse dixit*. *Id.* Here, Mr. Fournier's opinions are connected to existing evidence and uncontradicted by the undisputed facts.

That being the case, "[e]xpert testimony is helpful to the trier of fact if it concerns matters that are beyond the understanding of the average lay

person." *Bostick*, 321 F.R.D. at 417 (citations and internal quotations omitted).  In the instant case, Mr. Fournier has applied his expertise to develop opinions on matters of forensic engineering that are beyond the average lay person's understanding. The jury will be able to use these opinions to better evaluate how the accident may have happened. Thus, the Mr. Fournier's opinions will assist the trier of fact.

## CONCLUSION

For the reasons expressed above, the Court finds that Mr. Fournier's opinions are admissible. Plaintiff may challenge any perceived weaknesses in Mr. Fournier's methodology at trial.

Accordingly, it is hereby **ORDERED** and **ADJUDGED**:

(1) Plaintiff Irwin Tripp's motion to exclude the testimony of Donald J. Fournier (Dkt. 108) is **DENIED**.

**DONE AND ORDERED** at Tampa, Florida, on November 16, 2022.

*/s/ William F. Jung*
**WILLIAM F. JUNG**
**UNITED STATES DISTRICT JUDGE**

**COPIES FURNISHED TO**:
Counsel of Record